The plaintiff claims the benefit of section 1205 of the Code, which provides that:

"Where the action is against two or more defendants, and a several judgment is proper, the court may, in its discretion, render judgment, or require the plaintiff to take judgment, against one or more of the defendants; and direct that the action be severed, and proceed against the others, as the only defendants therein."

The section in question would apply if it appeared that, when the defendant Charles P. Rogers made the contract in a firm name, there was no firm, and he had no partner, or that the contract was made for his own purposes, and not in the business of the firm. Stedeker v. Bernard, 102 N. Y. 330, 6 N. E. 791.   In such case he would be individually liable, and judgment might be rendered against him, even if dismissed against the other defendants.   But it did not appear that there was no firm of Charles P. Rogers & Co. of which defendant was a member at that time, or that the contract was his individual contract.   The plaintiff proved nothing of the sort, and a several judgment would be improper.

The case is claimed by the plaintiff to be one of hardship, because, owing to repeated trials and appeals in the city court, costs have accumulated far exceeding the original claim.   But the answer of defendants apprised plaintiff at the outset that issue was taken as to the copartnership of the defendants, and he could have saved further expense by discontinuance or amendment.

Judgment affirmed, with costs.   All concur.

---

(16 Misc. Rep. 14.)

UPTEGROVE et al. v. CENTRAL R. CO. OF NEW JERSEY.

(Supreme Court, Appellate Term, First Department.   February 26, 1896.)

1. CARRIERS—INSTRUCTIONS TO AGENT—CONTRACT.
    In an action against a carrier for goods lost in transit, it appeared that plaintiff notified defendant that he desired to ship some lumber, and defendant sent its own lighter to transport it to the depot; that plaintiff informed defendant that instructions as to shipment would be given to the captain of the lighter, ·to which arrangement, which was the usual one between the parties, defendant assented.   *Held*, that the instructions to the captain formed a part of the contract of affreightment.

2. SAME—DEVIATION FROM SHIPPING DIRECTIONS—LIABILITY.
    Where goods are not shipped according to instructions, the carrier becomes an insurer, and is liable for a loss of the goods occurring on a connecting line, though the consignor knew that the carrier had restricted its liability to its own line.

Appeal from city court of New York, general term.

Action by William E. Uptegrove and others against the Central Railroad Company of New Jersey to recover for goods lost in transit. From a judgment affirming a judgment in favor of plaintiffs, rendered on direction of the trial court (35 N. Y. Supp. 1118), defendant appeals.   Affirmed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

Robert Thorne, for appellant.
M. P. O'Connor, for respondents.

BISCHOFF, J.    The plaintiffs brought this action to recover for goods lost in transit, after delivery to the defendant for carriage and forwarding to certain parties in Cincinnati, Ohio.    There is no contradiction in the evidence, and upon practically an agreed state of facts the case was submitted to the trial judge for determination. His finding was in favor of the plaintiffs, and the defendant's exceptions bring before us the question whether, as matter of law, a recovery for the loss could be had.

In support of the judgment the following facts appear:    Plaintiffs, desiring to make shipments of lumber to two firms in Cincinnati, so notified the defendant, who thereupon sent its own lighter to transport the lumber from their yard to its depot.    The defendant's agent was personally informed, at the time, that instructions as to the manner in which shipments should be made would be given to the captain of the lighter, and he made answer that "that was all right."    There had been a course of dealing between the parties with regard to shipments of this nature, and instructions given to the captains of the lighters employed had been uniformly carried out by the defendant. Thus, unless the instruction given in this case, and upon which the matter in suit hinges, was unreasonable, and without the usual scheme of transaction between the parties, we must hold it to have formed a part of the contract of affreightment, and resolve the question accordingly.

This instruction, which was given to and acquiesced in by the captain of the lighter, was that all the lumber consigned to Unewehr & Co. should be placed in one car, and to facilitate this purpose the consignment was placed in a portion of the lighter separate from other consignments.    Actually the shipment was made in two cars; one car being filled, and the excess placed in a car with other goods.    The defendant had cars of sufficient size to carry this whole consignment, and had shipped larger quantities of lumber for the plaintiffs before in one car.    No evidence was adduced wherefrom it might be gathered that this instruction was unreasonable, in view of the course of dealing between the parties; and we cannot hold that there was no room for an inference that such a method of shipment as the plaintiffs directed was, in its nature, reasonably within the contemplation of the parties, as an incident to the carriage, when invoked.    The matter fell naturally within the province of the captain, who had been held out as an agent to receive instructions touching the manner of shipment.    These oral instructions, then, which were in evidence without objection, taken together with the bill of lading, formed the contract between the parties;    but, in the bill of lading, it was agreed that the defendant should not be liable for a loss occurring beyond its own line, and, since the evidence shows that the lumber consigned to Unewehr & Co. was delivered, packed in two cars, to the next connecting carrier, it is claimed that no liability for the loss attached, although only one car load finally reached the consignee.

It appears that the plaintiffs had notice of this restriction of liability, notwithstanding that the particular bill of lading in this case was not delivered until after the goods were in transit, since, in the

various other shipments previously made, the same form of contract was used, and nothing different was looked for, apparently, in this instance.   Nor does the proof show any negligence upon the defendant's part in the method of packing the lost lumber in the second car, nor in the manner of labeling that car.   But the liability was, we think, properly imposed, upon the ground that there was a deviation by the carrier from the terms of the contract, and that, for its failure to ship the lumber in one car, the defendant was chargeable as an insurer of the goods.   It appears that the reason of the requirement for shipment in this manner was that another consignment of similar lumber was made upon the same day by the plaintiffs to other parties in Cincinnati, and it was feared that a commingling and loss might result if the larger consignment was not shipped entirely by itself.   Knowing that the defendant assumed no liability beyond its own line, it was but natural that the plaintiffs should seek some reasonably safe method of delivery, and it would appear that, from the defendant's failure to observe the requirement imposed, exactly what was feared did happen.   The goods were accepted for carriage under an agreement as to the terms of which the defendant had, at least, imputable knowledge, and the case appears to be a proper one for the application of the rule charging a carrier as insurer of goods, notwithstanding exemptions in the contract, where there has been a deviation from its material terms.   Maghee v. Railroad Co., 45 N. Y. 514.   This main question is alone presented to us by the appellant, and we conclude that there is not ground for a reversal.

Judgment affirmed, with costs.   All concur.